**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CURWOOD L. PRICE,**

        Plaintiff,   Case No. 05-71403-DT

vs.

        Honorable Bernard A. Friedman
        Magistrate Judge Steven D. Pepe

**PATRICIA CARUSO,**

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

On April 11, 2005, Plaintiff, Curwood L. Price, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a complaint for damages and for declaratory and injunctive relief against Defendant, MDOC Director Patricia Caruso, pursuant to 42 U.S.C. § 1983 and Religious Land Use and Institutionalized Persons Act (RLUIPA) .[1]  All pretrial proceedings have been referred pursuant to 28 U.S.C. §636 (b)(1)(B).  Defendant filed a motion for dismissal on October 28, 2005 (Dkt. # 23).  For the reasons stated below, IT IS RECOMMENDED that Defendant's motion be GRANTED IN PART and the following of Plaintiff's claims be dismissed: claims for injunctive and declaratory relief and damages claims arising from RLUIPA claim against Defendant in her personal capacity and §1983 claim against Defendant in her official capacity.

---

[1] While Plaintiff in his claim does not specifically mention the RLUIPA in his complaint, his response to Defendants' motion asserts a RLUIPA claim and the facts of his complaint are sufficient to allege a RLUIPA claim.  Thus, his claims will be treated as also constituting a RLUIPA claim.  *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974 (2d Cir. 1945)(A plaintiff is required to plead a "simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and hopes to recover" and it is the "court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not".).

**I.     BACKGROUND**

Plaintiff's complaint alleges that the directive contained in February 17, 2004, and March 5, 2004, memos (the "Memos", Dkt. #1, Exhibit A & B) issued by a Dave Burnett, whom Plaintiff alleges was acting under the direction of Defendant, constitutes an impermissible violation of his First Amendment right to freely practice his Jewish faith and are violative of Sixth Circuit law set forth in *Whitney v. Brown*, 882 F.2d 1068 (6th Cir. 1989).

In *Whitney*, prisoners held at the State Prison of Southern Michigan (SPSM) challenged a prison policy instituted in 1985 that prohibited prisoners from different areas within SPSM from meeting for weekly Sabbath services and annual Passover Seder. *Id.* at 1069. Jewish prisoners at SPSM had been congregating in SPSM's Central Complex for their religious services from the time SPSM opened until 1985 – forty-five years. *Id.* at 1070. In 1985, SPSM was divided into Central, South and North Complex. Each complex was separate and autonomous and each housed prisoners of different security levels. Central Complex was maximum security, South Complex minimum security and North Complex medium security. *Id.* at 1069-70.

The Jewish faith requires that Sabbath services be conducted with the Torah and a minyan – a gathering of no less than 10 persons over the age of 13. *Id.* at 1070. The Passover Seder does not require a Torah or a minyan, "but because [it] is a celebration of the exodus of the Jewish people out of Egypt, an individual's solo seder, or one conducted with only a very few worshippers, was characterized [ ] as 'a very miserable seder'". *Id.* The *Whitney* Plaintiffs argued that preventing Jewish prisoners from the Central, North and South Complex from congregating did not allow a minyan for Sabbath Services and made celebrating the Seder "miserable" (at the time of the suit there were 4 Jewish practitioners in Central Complex and a total of 6 practitioners in the North and

2

South Complex). *Id.* This, they argued, was a violation of their First Amendment right to free exercise of religion.

The Sixth Circuit held that the prison's "goal of minimizing mingling between inmates of different security levels is sound prison management", but held that this goal was not reasonably related to the restraints on Sabbath services. *Id.* at 1073-74. The Sixth Circuit also upheld the lower court's finding that the Passover Seder, as then modified, "fully accommodated the inmates' rights at a *de minimis* cost to the prison officials' valid penological interests and should be permitted". *Id*. The Court found that *under the then current conditions of the prison*, the transfer of 6 prisoners posed few problems for prison officials, but acknowledged that plans to further divide SPSM into 6 completely separate facilities "might raise questions concerning inmates' intercomplex travel" when this occurred, "five or six years" later. *Id.* at 1075.

SPSM has now been broken down into various separate facilities including the relevant facilities – Parnall Correctional Facility (referred to by the parties as "SMT"), which houses Level I inmates and Southern Michigan Correctional Facility (referred to by the parties as "JMF"), which houses Level II and IV inmates (Dkt. # 23, p. 3).

Plaintiff was housed in JMF at the time he filed this suit. He challenges the following provisions of the new policy contained in the Memos as violative of *Whitney*: (a.) prisoners from JMF no longer being transported to SMT for Jewish services and/or Seder,[2] (b.) food items being provided by the facility for addition to Seder meal plates (instead of a fully catered meal) and (c.) no outside guests for Seder dinner.

---

[2]The Memos state that this new policy satisfied the intent of *Whitney* because sufficient numbers of Jewish prisoners were now housed at SMT to meet a minyan (Dkt. #1, Exhibit A).

3

Plaintiff argues that the *Whitney* Court's directive is still valid despite the changes to the prison and requires intercomplex travel for Jewish religious services, a fully catered Seder dinner and 2 guests per prisoner for Seder dinner. Defendant argues that (a.) Plaintiff does not have standing to challenge the policies at JMF because he has been transferred to another facility, (b.) the changes in the prison were contemplated by the *Whitney* Court and under the new situation *Whitney* can be distinguished, (c.) there are sufficient numbers of Jewish prisoners in each facility to hold services, (d.) the *Whitney* opinion did not require the prison to permit outside guests or set standards for the preparation of the Seder meal and (e.) Defendant is entitled to immunity.

## II.     LEGAL STANDARD

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

4

summary judgment and disposed of as provided in Rule 56.

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also, Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). Once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.  ANALYSIS**

### Plaintiff's Transfer to Another Facility Moots Request for Declaratory and Injunctive Relief

Plaintiff was transferred from JMF to Muskegon Correctional Facility (MCF) in August 2005 – 5 months after the Complaint was filed in this matter. Defendant has labeled this problem as one of Article III standing. Yet the issue is really one of mootness. The difference in the doctrines of

standing and mootness was discussed in *Stevens v. Northwest Indiana Dist. Council, United Broth. of Carpenters*, 20 F.3d 720, 724 (7th Cir. 1994):

> Mootness doctrine refers to events occurring *subsequent* to the filing of suit which dissipate the requisite personal interest in the resolution of the claim that presumably existed at the commencement of the litigation. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, [ ] (1980)." For example, a request for an injunction to dissolve a trusteeship which has been lifted during the pendency of litigation presents an issue of mootness. *See, e.g., Air Line Stewards and Stewardesses Ass'n, Local 550 v. Transport Workers Union of America,* 334 F.2d 805, 808 (7th Cir.1964), *cert. denied,* 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563 (1965). .... Whether, ... the complained of injury is adequately traceable for Article III purposes to the past allegedly unlawful conduct is a matter of "causation," which is in turn a component of the jurisprudence of standing. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

*Id.*

In the present case Plaintiff was housed at JMF when the challenged directives were issued in the Memos, but has since been transferred to another facility. This does necessarily mean that he could not have been injured by the directives while he was still housed at JMF. Therefore, Plaintiff still has standing to bring this matter. Yet, the Sixth Circuit has held that a prisoner's claim for declaratory and injunctive relief becomes moot once the prisoner is transferred from the prison of which he complained to a different facility. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996). To the extent that Plaintiff asks for injunctive and declaratory relief against officials at JMT, his claim is moot. *See Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003). Yet, Plaintiffs claim for monetary damages pertaining to his alleged inability to practice his religion while housed in JMT remains cognizable. *See Boag v. MacDougall*, 454 U.S. 364 (1982) (transfer to another prison did not moot prisoner's damages claim arising from placement in earlier prison); *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1257 (10th Cir.2004) (injunctive relief could no longer redress the injury but plaintiff's damages claim saved the action from mootness);

*Prime Media, Inc. v. City of Brentwood, Tenn.,* 398 F.3d 814, 824 (6th Cir. 2005).

### Defendant is not Entitled to Complete Immunity from Request for Monetary Damages

Defendant correctly argues that an unconsenting State is immune from suits brought in federal courts by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890); *Duhne v. New Jersey*, 251 U.S. 311 (1920); *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47 (1944); *Parden v. Terminal R. Co.*, 377 U.S. 184 (1964); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279 (1973). It is also well established that even though a State is not named as a party to the action, the suit may nonetheless be barred by the Eleventh Amendment where a private party is "seeking to impose a liability which must be paid from public funds in the state treasury...." *Edelman v. Jordan,* 415 U.S. 651, 662-663(1974) (citations omitted).

Plaintiff named Patricia Caruso as the sole defendant in this matter, but did not indicate whether he was suing her in her official or unofficial capacity, or both.[3]

#### *Official Capacity – Sovereign Immunity*

Since MDOC is an entity which is funded with public funds from the Michigan State Treasury, the Eleventh Amendment often bars suit against MDOC. *Richard v. Michigan Dept. of Corrections,* 22 Fed. Appx. 563, 564 (6th Cir. 2001)(citing *Will v. Michigan Dep't of State Police*,

---

[3]The Sixth Circuit has "adopted a 'course of proceedings' test to determine whether a §1983 defendant has received notice that a plaintiff intends to hold the defendant personally liable for a constitutional violation. .... This 'test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint ....' .... Here, Plaintiff sought money damages in his complaint. Because state officials cannot be sued for money damages in their official capacities, *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, ...122 S.Ct. 1640, 1643 ... (2002), the request for money damages indicates a personal capacity suit." *Young ex rel. Estate of Young v. Martin*, 51 Fed. Appx. 509, 512 -513 (6th Cir. 2002).

491 U.S. 58, 66 (1989); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir.1986)).  Further, individuals sued in their official capacities stand in the shoes of the entity they represent.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) ("Official capacity suits ... represent only another way of pleading an action against an entity of which an officer is an agent.")); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

The United States Supreme Court has specifically held that a State is not a "person" against whom a §1983 claim for money damages might be asserted.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  But, the Eleventh Amendment does not automatically provide a shield of sovereign immunity from claims arising in all instances, and Plaintiff's claims arising under the Religious Land Use and Institutionalized Persons Act (RLUIPA), survive a challenge based solely on immunity, as described more fully below.

The state may waive its Eleventh Amendment immunity by consenting to suit (*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984)), and acceptance of federal funding can, in certain instances, constitute a waiver of a state's sovereign immunity ( *South Dakota v. Dole*, 483 U.S. 203, 207 (1987)(Congress may condition its grant of funds to the States upon their taking certain actions and acceptance of the funds entails an agreement to the actions)).  The language of RLUIPA anticipates such a waiver: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government," where a government is defined as "a State, county, municipality, or other governmental entity created under

8

the authority of a State." 42 U.S.C.A. § 2000cc-2(a), § 2000cc-5(4)(a)(i); *Benning v. Georgia*, 391 F.3d 1299, 1305 (11th Cir. 2004) ("Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA.").

Defendant did not address the issue of whether MDOC has accepted federal funding, which would preclude its sovereign immunity defense under RLUIPA, nor the validity of Plaintiff's RLUIPA claim. Therefore, Defendant's claim for sovereign immunity based on her status as a state official must be denied.

In sum, because Plaintiff's transfer to a new facility bars his claims for injunctive or declaratory relief the only relief available from Defendant in her official capacity is a claim for monetary damages, which is not cognizable under §1983, but may be pursued under RLUIPA.

### *Personal Capacity – Qualified Immunity*

> In civil suits for money damages, government officials acting in their official capacity are entitled to qualified immunity for discretionary acts which do not violate clearly established law of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ... The Supreme Court has recently clarified that, in order to assess whether the defendants-officials in this case should be cloaked with immunity from suit, we must engage in a two-part, sequential analysis: first, we must determine whether the plaintiff has alleged facts which, when taken in the light most favorable to [him], show that the defendant-official's conduct violated a constitutionally protected right; if we answer the first question in the affirmative, we must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

*Comstock v. McCrary*, 273 F.3d 693, 701-702 (6th Cir. 2001).

Whether the government official "is protected by qualified immunity turns on 'the objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time the action was taken." *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).

In the present case, this two-part inquiry cannot be sufficiently answered on the pleadings as a 12(b)(6) motion requires. Nor can it be sufficiently answered by converting this motion to one for summary disposition and taking into account the facts presented by the parties outside of the pleadings.

The conditions that prompted the *Whitney* Court to require intercomplex travel of Jewish prisoners between the complexes at SDSM may no longer be present and the new conditions may or may not have required accommodations in order for Sabbath and Seder services to continue while Plaintiff was still housed at JMF.[4] In fact, the new conditions may negate the reasons the *Whitney* Court felt accommodations could be made for Jewish prisoners with only a *de minimis* effort by the prison. These are questions of fact for which neither side has provided sufficient support for the Court to make a summary decision.

The affidavit attached to Defendant's motion indicates that the directives in the Memos were valid because there were enough Jewish inmates at both JMF and SMT for Sabbath services to be conducted with a minyan and Seder services would be performed at each location. Yet, Plaintiff alleges that there were not enough Jewish prisoners attending services at JMF to allow him to participate in Sabbath services with a minyan. Defendant did not provide information regarding how many prisoners that identified themselves as Jewish at JMF actually attended Sabbath services.

---

[4]In fact, an April 2004 motion for a temporary restraining order and preliminary injunction based on the same March 29, 2004, memo cited by Plaintiff in this matter was recently denied in the *Whitney* case by Judge John Corbett O'Meara. Judge O'Meara held that "significant changes in circumstances in the prisons in Jackson, Michigan area have occurred since the *Whitney* decision was rendered in 1989. .... Importantly, the newer SMT and JMF facilities have their own chapel areas ... and each facility now houses a sufficient Jewish prisoner population to meet the minyan requirements for Sabbath services and the preferred community for Seder. ....  ...both SMY and JMF have scheduled Seders for April 8, 2004."

Therefore, a question of fact remains as to whether Plaintiff was entitled to further or continuing accommodations to ensure that a minyan was present in the facility in which he was housed despite the number of eligible Jewish prisoners in that facility.[5]

In sum, though Plaintiff's claims for injunctive and/or declaratory relief are mooted, Plaintiff's claim for monetary damages under §1983 against Defendant in her personal capacity remains cognizable, as does the RLUIPA claim against her in her official capacity[6].

## III. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendant's Motion be GRANTED IN PART and the following of Plaintiff's claims be dismissed: claims for injunctive and declaratory relief and damages claims arising from RLUIPA claim against Defendant in her personal capacity and §1983 claim against Defendant in her official capacity.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

---

[5]There currently is also a question of fact regarding whether (if the Memos can be attributed to Defendant) Defendant's actions can be considered reasonable when "assessed in the light of the legal rules that were 'clearly established' at the time the action was taken". Even taking Plaintiff's allegations as true, unless Plaintiff can show that Defendant had knowledge that not enough Jewish inmates at JMF would attend Sabbath services to comprise a minyan (provided there are actually 16 Jewish prisoners at JMF) it seems doubtful that Plaintiff can succeed in saying that Defendant's decision to maintain separate Sabbath services was unreasonable.

[6]Plaintiff may not assert a RUILPA claim against Defendant in her individual capacity - "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against *a government*," where a government is defined as "a State, county, municipality, or other governmental entity created under the authority of a State." 42 U.S.C.A. §2000cc-2(a) (emphasis added).

11

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: April 21, 2006                                           s/Steven D. Pepe
Ann Arbor, Michigan                                             United States Magistrate Judge




Certificate of Service

I hereby certify that a copy of this Report and Recommendation was served upon the Plaintiff and attorney(s) of record by electronic means or U. S. Mail on April 21, 2006.

                                                                s/William J. Barkholz
                                                                Courtroom Deputy Clerk

12