UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURWOOD PRICE,

       Plaintiff,                          Civil Action No.
                                           05-CV-71403-DT
vs.

                                           HON. BERNARD A. FRIEDMAN

PATRICIA CARUSO,

       Defendant.
_____/

**OPINION AND ORDER ACCEPTING AND ADOPTING IN PART
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
and
GRANTING IN PART DEFENDANT'S MOTION FOR DISMISSAL**

This matter is presently before the Court on Defendant's Motion for Dismissal for Lack of Subject Matter Jurisdiction.[1] Curwood Price ("Plaintiff") is a pro se prisoner. Patricia Caruso ("Defendant") is the Director of the Michigan Department of Corrections ("MDOC"). Plaintiff, who is Jewish, alleges that two official MDOC memorandums—signifying changes in prison policy—prevent him and other Jewish prisoners from holding adequate weekly Sabbath services and an annual Passover Seder.[2]

---

[1] Defendant seems somewhat confused about the federal rule under which she brings her Motion for Dismissal. The caption states: "Rule 12(b)(1) Motion for Dismissal for Lack of Subject Matter Jurisdiction." (Def.'s Mot. for Dismissal, 1.) However, elsewhere in her Motion for Dismissal, Defendant states that "Fed. R. Civ. P. 12(b)(6) provides for dismissal of an action for lack of subject matter jurisdiction" and that "Plaintiff's action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) based on the lack of subject matter jurisdiction." (Id. ¶¶ 5, 11.) Moreover, Plaintiff seems to base much of her motion on an alleged failure to state a claim under Rule 12(b)(6). Therefore, the Court will examine Defendant's Motion for Dismissal in regard to Rules 12(b)(1) and 12(b)(6).

[2] In the Jewish faith, the Sabbath is observed from Friday sundown until Saturday sundown. As explained by the Sixth Circuit, "a Sabbath service involves the Torah [a scroll containing holy scriptures, commonly known as the Old Testament] and a minyan, which is a

Magistrate Judge Steven Pepe has submitted a Report and Recommendation, in which he recommends that the Court grant in part Defendant's Motion for Dismissal. Plaintiff and Defendant object to the Report and Recommendation.

## I.   HISTORY OF THE CASE

### A.   FACTUAL BACKGROUND

Plaintiff is currently incarcerated at the Muskegon Correctional Facility ("MCF") in Muskegon, Michigan. At the time that Plaintiff filed his Complaint in 2005, he was a prisoner at the former State Prison of Southern Michigan ("SPSM"), in Jackson, Michigan. More than a decade ago, the SPSM was divided into separate facilities, which include the Southern Michigan Correctional Facility ("JMF") and the Parnall Correctional Facility ("SMT"). (Def.'s Br. Supp. Mot. for Dismissal, 3; Mag. J.'s R&R, 3.) At the time of the Complaint, Plaintiff was housed at the JMF. (Def.'s Br. Supp. Mot. for Dismissal, 2.)

Plaintiff alleges that two prison memorandums—dated February 27, 2004, and March 3, 2004—are violations of both the First Amendment and the caselaw established under an earlier Sixth Circuit case, Whitney v. Brown, 882 F.2d 1068, 1070 (6th Cir. 1989).[3] (Pl.'s Compl. ¶ 13.) Plaintiff states that both memorandums were issued by Special Activities Coordinator Dave

---

gathering of no less than ten persons over the age of thirteen of the Jewish faith." Whitney v. Brown, 882 F.2d 1068, 1070 (6th Cir. 1989).
    The annual Passover Seder is a family and community celebration that "marks the exodus of the Jewish people from Egypt." Id. at 1074. Although a Seder includes a meal and a religious service, "[s]eders do not require the presence of a Torah or a minyan." Id. at 1070.

[3]In Whitney, the Sixth Circuit ruled that a 1985 MDOC policy—prohibiting prisoners from travelling between complexes within the SPSM prison in order to attend weekly Sabbath services and an annual Passover Seder—violated the Free Exercise Clause of the First Amendment.

Burnett[4] (Id. ¶¶ 11-12) and "under the direction of the Defendant," (Id. ¶¶ 6-7).

The February 27, 2004, memorandum states, in relevant part:

> SUBJECT:   Jewish Services at JMF and SMT
> . . . .
> Effective April 1, 2004, JMF and SMT will no longer have combined worship services. Prisoners from SMT will no longer be transported to JMF for services. SMT will determine the appropriate time and space for their Jewish Services.
>
> It is further noted that Kosher menu prisoners have no right to restricted or exclusive use seating. SMT Kosher menu line prisoners will be seated as directed by dining room staff.
>
> It has been determined that the intent of the court order in Whitney v. Brown, 86-CV-1529-DT, will be satisfied with separate services because sufficient numbers of prisoners are housed at SMT to meet the requirement for ten men (a minyan) for a Torah service.

(Id. Ex. A.)

The March 3, 2004, memorandum states, in relevant part:

> SUBJECT:   Jewish Seder
>
> Pursuant to instructions from the Correctional Facilities Administration Special Activities Coordinator, Mr. Dave Burnett, the following changes are to be implemented as follows regarding the Seder Meals at JMF and SMT.
>
> JMF and SMT will have separate Seders. That is, JMF will accommodate a Seder service and SMT will accommodate a separate Seder service. SMT will not transport prisoners to JMF for a Seder service. . . .
>
> Because some Jewish prisoners keep Kosher, the Seder must be Kosher. Consequently, Kosher for Passover plates shall be ordered

---

[4] Plaintiff seems to incorrectly state that Dave Burnett prepared both memorandums. While the February memorandum shows that it was issued by "Dave J. Burnett, Special Activities Coordinator" (Pl.'s Compl., Ex. A), the March memorandum shows that it was issued by "David M. Leach, Chaplain" (Id. Ex. B).

3

>from Aleph Institute, Surfside, Florida. . . . If desired, a separate ceremonial plate may also be ordered. . . . No other vendor shall be used without approval from Mr. Burnett.
>
>Each prisoner who attends the Seder must pay his pro-rata share of the cost of the Seder. . . . Each Passover meal plate costs $10.00. Each prisoner is required to pay for his meal. . . . Each facility shall determine how the food will be ordered, received, stored, and made available to the space where it will be served. No food shall be removed by participating prisoners or Seder service leaders from the area where the Seder is observed.
>
>Only those prisoners who have been regularly on call-out for Jewish services and/or study groups shall be eligible to participate in the Seder observance.
>
>Guests shall be allowed only as follows:
>
>- An appropriate Rabbi (or Cantor or other qualified person) plus not more than one assistant from the community shall be recruited by the Chaplain to conduct the Seder. Neither the Rabbi (or Cantor or other qualified person) nor the assistant is to be a family member of a prisoner nor on the approved visitor's list of any prisoner.
>
>- Personal guests/family members shall not be allowed.
>
>The facility, in cooperation with the person who will conduct the Seder, shall determine the length of time allowed for conducting the Seder.
>. . . .
>No additional food items, care packages, or treat sacks will be accommodated. . . .

(Id. Ex. B.)

Plaintiff seeks a Court declaration ordering that the two prison memoranda are invalid; granting injunctive relief to prevent further implementation of the memoranda; and awarding nominal, punitive, and compensatory damages. (Id. at 5-6.)

### B. PROCEDURAL HISTORY

4

On April 11, 2005, Plaintiff filed his Complaint.[5] On October 28, 2005, Defendant filed its Motion for Dismissal for Lack of Subject Matter Jurisdiction. Plaintiff responded.

On April 21, 2006, Magistrate Judge Steven Pepe issued a Report and Recommendation regarding Defendant's Motion for Dismissal. Both Plaintiff and Defendant filed objections to the Report and Recommendation. Plaintiff filed a Response to Defendant's objections.

## II.    MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In his Report and Recommendation, Magistrate Judge Pepe recommends that Defendant's Motion for Dismissal be granted in part and therefore that several of Plaintiff's claims be dismissed. Although Plaintiff did not expressly characterize his claims as such, Magistrate Judge Pepe interprets Plaintiff's Complaint as based on 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA," 42 U.S.C. § 2000cc, *et seq*.). (Mag. J.'s R&R, 1 & n.1.) The Magistrate Judge recommends that "the following of Plaintiff's claims be dismissed: claims for injunctive and declaratory relief and damages claims arising from RLUIPA claim against Defendant in her personal capacity and § 1983 claim against Defendant in her official capacity." (Id. at 1.) In other words, Magistrate Judge Pepe finds that "[al]though Plaintiff's claims for injunctive and/or declaratory relief are mooted, Plaintiff's

---

[5]The caption on Plaintiff's Complaint states: "Curwood L. Price, pro se, and other Jewish Practitioners." (Pl.'s Compl., 1.) Furthermore, in the body of the Complaint, Plaintiff similarly states that he brings the action on behalf of "all other Jewish Practitioners past, presently [sic], and in the future residing at JMF and SMT." (Pl.'s Mem. of Law Supp. Compl., 1.)

However, the Court regards the Complaint as being brought only on behalf of Plaintiff himself. Although it appears that Plaintiff is attempting to create a class action, his effort fails. Plaintiff has named an apparently overbroad class of people. Moreover, Plaintiff has not filed a motion to certify such a class action with this Court. Moreover, even in the event that Plaintiff did not intend to attempt a class-action lawsuit, the Court would still regard the case in the same manner, for Plaintiff should have specifically identified the other individual Plaintiffs *by name* in the caption. Therefore, the Court will treat Plaintiff's action as a one-plaintiff case, brought only by Plaintiff himself.

claim for monetary damages under § 1983 against Defendant in her personal capacity remains cognizable, as does the RLUIPA claim against her in her official capacity." (Id. at 11 (footnote omitted).)

### III.     ANALYSIS OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

As required by Federal Rule of Civil Procedure 72(b), the Court reviews this matter *de novo*. FED. R. CIV. P. 72(b). Having made such a review, the Court will grant Defendant's Motion for Dismissal in part.

#### A.     PLAINTIFF'S COMPLAINT

The United States Supreme Court has held that the courts should hold a "pro se complaint" to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The Sixth Circuit has explained, though, that in spite of such liberal treatment of the pleadings of pro se litigants, such as prisoners, "pro se plaintiffs are not automatically entitled to take every case to trial." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996). In other words, "the lenient treatment generally accorded to pro se litigants has limits." Id. Thus, while a court should liberally interpret a pro se complaint, a court should neither re-invent a plaintiff's complaint nor plead allegations that a plaintiff wishes not to pursue. Such actions would be condescending and overly paternalistic, and it would grind against the time-old principle that a plaintiff is the master of his complaint. For instance, the United States Supreme Court has found that "the party who brings a suit is master to decide what law he will rely upon." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913). Therefore, this Court liberally interprets pro se complaints, but always honors a plaintiff as the master of his own pleadings.

Here, the Magistrate Judge has liberally interpreted Plaintiff's Complaint. For instance, although Plaintiff does not mention RLUIPA in his Complaint, Magistrate Judge Pepe states that Plaintiff's "response to Defendant's motion asserts a RLUIPA claim and the facts of his complaint are sufficient to allege a RLUIPA claim." (Mag. J.'s R&R, 1 n.1.) The Magistrate Judge also interprets the facts of Plaintiff's Complaint as presenting a Section 1983 claim, even though Plaintiff did not mention Section 1983. (Id. at 1.) Thus, Magistrate Judge Pepe bases his recommendations on Plaintiff's having presented a cause of action pursuant to Section 1983 and RLUIPA.

Plaintiff, though, *expressly* disagrees with part of the Magistrate Judge's interpretation. On the first page of his "Objection to Magistrate's Report and Recommendation," Plaintiff directly states—in bold, capital letters—"**THE PLAINTIFF DID NOT FILE A § 1983 ACTION**." (Pl.'s Objection to Mag. J.'s R&R, 1.) Plaintiff further explains, again using underlines and bold text: "In the Plaintiff's original action he filed a complaint for Declaratory Judgement [sic] pursuant to 28 USCA § 2201, and **not** 42 USCA § 1983." (Id.) Moreover, Plaintiff states, in similar textual style, that the "Plaintiff specifically AVOIDED § 1983, as he believes section § [sic] 2201 and 2202 were appropriate." (Id.) On the other hand, Plaintiff explains that he "has no objections to the Magistrates [sic] application of RLUIPA to his pleadings." (Id. at 5.) Therefore, the Court will regard Plaintiff's Complaint as he wishes—as a claim brought pursuant to Section 2201 and RLUIPA.[6]

---

[6]This case is distinguishable from many prisoner cases, where a pro se prisoner welcomes the court's liberal interpretation of an inartfully plead complaint. Here, though, Plaintiff has *specifically* objected to the Magistrate Judge's interpretation of his Complaint. Plaintiff has *intentionally plead* in the way that he has done. It is, after all, his Complaint. The Court will neither wrest the reins of the Complaint away from Plaintiff, nor force Plaintiff to plead a cause of action that he has expressly disavowed.

B.     **DEFENDANT'S MOTION FOR DISMISSAL**

First, the Court will dismiss Plaintiff's claim brought under Section 2201. Section 2201 is a form of relief, not a cause of action. Furthermore, Plaintiff's requests for declaratory and injunctive relief are moot because Plaintiff is no longer incarcerated at JMF, as he has been transferred to MCF. See Dellis v. Corrections Corp. of Am., 257 F.3d 508, 510 (6th Cir. 2001) (stating plaintiff's requests for injunctive and declaratory relief are moot because plaintiff is no longer incarcerated at the prison where the cause of action allegedly arose); Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996) (same).[7] Thus, any claim for declaratory or injunctive relief is dismissed as moot.

Second, although Defendant has filed a Motion for Dismissal under Rules 12(b)(1) and 12(b)(6), the Court regards it as a Motion for Summary Judgment under Rule 56(c).[8] Rule 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). The United States Supreme Court has explained that Rule 56(c) "authorizes summary judgment 'only where the moving party is entitled to judgment as a

---

[7] Unlike declaratory and injunctive relief, Plaintiff may still be entitled to monetary relief. A prisoner's transfer to another prison does not moot a prisoner's claim for monetary damages. See Boag v. MacDougall, 454 U.S. 364, 364 (1982) (per curiam) (stating a prisoner's "transfer [does] not moot the damages claim"); Prime Media, Inc. v. City of Brentwood, 398 F.3d 814, 824 (6th Cir. 2005) (same).

[8] Federal Rule of Civil Procedure 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). Here, Plaintiff and Defendant have submitted such affidavits and corollary documents outside of the pleadings.

matter of law, where it is quite clear what the truth is, . . . (and where) no genuine issue remains for trial . . . (for) the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.'" Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  Moreover, when a court determines if a genuine issue of material fact exists, the court must view the evidence "in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  Thus, if there is a genuine dispute as to a material fact, then summary judgment should not be granted.

In the case at hand, Plaintiff may have a cognizable claim for monetary damages against Defendant, under RLUIPA.  RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title ["jail, prison, or other correctional facility"], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest;        and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a) (2003).  RLUIPA further provides:

> A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.  Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.

Id. § 2000cc-2(a).  A "government" is defined as a "State, county, municipality, or other

governmental entity created under the authority of a State" or "any other person acting under color of State law." Id. § 2000cc-5(4)(A). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. 2000cc-5(7)(A). Lastly, RLUIPA applies "in any case" where "the substantial burden is imposed in a program or activity that receives Federal financial assistance." Id. 2000cc-1(b). Thus, under RUILPA, Plaintiff may have a claim against Defendant, in her official governmental capacity, for monetary damages.

Here, Plaintiff asserts that the two prison memoranda burden his First Amendment rights because they interfere with his free exercise of religion. Plaintiff alleges that he cannot properly observe the weekly Sabbath and annual Passover Seder unless the MDOC allows intercomplex travel between SMT and JMF for weekly Sabbath services. If intercomplex travel is prohibited, Plaintiff alleges that there is not enough Jewish prisoners to achieve a minyan, and therefore he cannot properly observe the weekly Sabbath service. Plus, Plaintiff asserts that the prison does not provide an adequate Seder.

In addition to his First Amendment rights, Plaintiff further contends that the two prison memoranda violate Sixth Circuit caselaw, as established by the court of appeals in Whitney. The Whitney court held that a 1985 MDOC policy, which prevented Jewish prisoners from travelling between complexes within SPSM in order to attend weekly Sabbath services and an annual Passover Seder, violated the Free Exercise Clause of the First Amendment. The Whitney court explained that "the Passover Seders, as modified to meet the prison officials' requests, fully accommodate the inmates' rights at a *de minimis* cost to the prison officials' valid penological interests and should be permitted." Whitney, 882 F.2d at 1074. Furthermore, the Sixth Circuit found that "the prohibition of intercomplex travel of the six Jewish inmates [in order to achieve a

10

minyan] to be an exaggerated response to speculative security objectives, and, therefore, it is invalid."  Id. at 1078.

The Whitney court, though, narrowed its holding to only those conditions of the prison *at the time* of the complaint, in the mid-1980s.  The Whitney court stated that "[t]he inmates acknowledge that plans to divide the SPSM into separate facilities one day, apparently now five or six years down the road, might raise other questions concerning inmates' intercomplex travel."  Id. at 1075.  Moreover, it seems that those anticipated changes did indeed materialize after the Whitney opinion was issued.  In an affidavit submitted along with Defendant's Motion for Dismissal, Special Activities Coordinator Dave Burnett states:

> 4.   In 1986 . . . . [There were] three cell blocks of SPSM.  All were part of SPSM under a single administration. [SPSM was later broken up into independent facilities, including SMT (housing Level I prisoners) and JMF (housing Level II and III prisoners).]
>
> 5.   Therefore, JMF and SMT are now separate, independently managed prison facilities, quite unlike the situation in 1986.
>
> 6.   In 1986, an all faith chapel building existed at SPSM.  Within that chapel building was a Jewish chapel.  Today, that all faith building, including the Jewish Chapel, is not available for use by anyone because it is in an area of SPSM that is no longer open.
>
> 7.   In 1986, there were significantly fewer Jewish prisoners in the entire SPSM than there are in JMF and SMT today.  In 1986, it was determined that in order to have a minyan, prisoners from the various parts of SPSM needed to gather together to have sufficient persons present for a Torah service.  A minyan requires at least 10 males over the age of 13.  As the court will note, the US [sic] Court of Appeals for the Sixth Circuit decision in Whitney v. Brown, 882 F.2d 1068 (6 [sic] Cir. 1989), recognized that prisoners from all over SPSM had to be gathered together to find enough prisoners for a minyan.  Similarly, if the prisoners had been left separate, a Jewish prisoner wishing to celebrate Seder may well have found themselves celebrating alone because of the lack of other Jewish prisoners in his location.  There are many more Jewish prisoners in SMT and JMF today.  For example, on

11

> January 21, 2004, there were 33 Jewish prisoners at SMT, and 16 Jewish prisoners at JMF.
>
> 8. . . . . There is no minimum number of required participants for the Seder celebration because it is not a Torah service. It does not require the presence of a rabbi. Therefore, with both SMT and JMF having sufficient Jewish prisoners to have their own minyan service, there are certainly enough Jewish prisoners at each facility to have the "community celebration" preferred for Seder.
>
> 9. There is no minimum number of people required for the Seder celebration, however, I agree with the observation of a witness in the original Whitney hearing, that if a person observed Seder alone, it would be considered a fairly "miserable Seder." However, as is explained above, there are sufficient Jewish prisoners at each facility to celebrate Seder in a community of fellow believers.

(Def.'s Mot. for Dismissal at Burnett Aff. ¶¶ 5-9.) Moreover, the Eastern District of Michigan has already found that determinative changes have occurred since the time of the Whitney opinion:

> Significant changes in circumstances in the prisons in the Jackson, Michigan area have occurred since the Whitney decision was rendered in 1989. A large section of the Central Complex is no longer operational, including the chapel where the Whitney plaintiffs congregated for weekly Sabbath services. Importantly, the newer SMT and JMF facilities have their own chapel areas available for prisoners of all religions; and each facility now houses a sufficient Jewish prisoner population to meet the minyan requirements for Sabbath services and the preferred community for Seder. . . . [B]oth SMT and JMF have scheduled Seders . . . .

Whitney, 86-CV-71529 (E.D. Mich. Apr. 2, 2004) (order denying motions for immediate consideration, civil contempt, and preliminary injunction). Thus, the prison memoranda do not seem to substantially burden Plaintiff's First Amendment rights nor to violate the caselaw established by Whitney.

However, when the facts are taken in the light most favorable to the non-moving party,

12

the Plaintiff creates a factual dispute that prevents summary judgment.  Plaintiff states that "[f]rom the time the memos were issued . . . there has never been a Seder Dinner, nor have there been enough Jewish Prisoner[s] present at JMF to hold a Sabbath Service."  (Pl.'s Objections to Mag. J.'s R&R, 5.)  Plaintiff explains, in partially underlined and bold text, that "there were **<u>NEVER</u> more than 6 prisoners attending Jewish Services.**"  (Id.)  Therefore, a genuine issue of material fact exists.

## IV.     CONCLUSION

The Court finds that Defendant's Motion for Dismissal was based on Rules 12(b)(1) and 12(b)(6), as Defendant asserted both rules as grounds for his Motion.  As the parties submitted affidavits and corollary documents outside of the pleadings, the Court regards Defendant's Motion for Dismissal as a Motion for Summary Judgment, as permitted under Rule 12(b).

Having reviewed the Magistrate Judge's Report and Recommendation, Motion for Dismissal, and relevant pleadings and documents, the Court finds that Magistrate Judge Pepe was correct in recommending the dismissal of Plaintiff's claims for injunctive and declaratory relief.  The Court similarly agrees with the Magistrate Judge's interpretation of Plaintiff's Complaint as presenting a RUILPA claim.  The Court also finds that there exists a genuine issue of material fact.  Lastly, and unlike the Magistrate Judge, the Court finds that Plaintiff did not assert a Section 1983 action.   Thus, for the reasons stated above, Plaintiff's and Defendant's objections are overruled in part.  Accordingly,

IT IS ORDERED that the Magistrate Judge's Report and Recommendation of April 21, 2006, is accepted and adopted only insofar as is consistent with the above findings.

13

IT IS FURTHER ORDERED that Defendant's Motion for Dismissal is granted in part, as is consistent with the above findings.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed, except as to Plaintiff's RUILPA claim for monetary damages.

   s/Bernard A. Friedman
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: September 8, 2006
       Detroit, Michigan

I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.

   /s/ Patricia Foster Hommel
     Patricia Foster Hommel
  Secretary to Chief Judge Friedman